IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MARQUIS ENERGY, LLC, | Case No. _____ |
| Plaintiff(s), | |
| v. | |
| RAYEMAN ELEMENTS, INC., and PVD LENDER, LLC | |
| Defendant(s). | |

**PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW, Marquis Energy, LLC, ("Marquis Energy"), by and through its attorneys of record, and for its Complaint against Defendants Rayeman Elements, Inc. ("Rayeman") and PVD Lender, LLC, ("PVD Lender") (Rayeman and PVD Lender will be referred to collectively herein as "Defendants") and hereby allege as follows:

**PARTIES**

1. Plaintiff, Marquis Energy is an Illinois limited liability company with its principal place of business located at 11953 Prairie Industrial Parkway, Hennepin, Illinois 61327. All members of Marquis Energy are residents of or domiciled in Illinois or Delaware.

2. Defendant, Rayeman is a Maryland corporation with its principal place of business located at 730 Tiffany Court, Gaithersburg, Maryland 20878.

3. Defendant, PVD Lender is a Nebraska limited liability company with its principal place of business located at 1501 M Street, Ord, Nebraska 68862. Upon information and belief, all members of PVD Lender are residents of, or domiciled in Nebraska.

## JURISDICTION

4. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy is more than $75,000, exclusive of interest and costs, and the parties are citizens of different states therefore establishing diversity of citizenship.

5. This Court has personal jurisdiction over Rayeman and PVD Lender as the transactions giving rise to this lawsuit took place in Nebraska and because both Defendants have sufficient contacts with the state of Nebraska to subject them to this Court's jurisdiction.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in Nebraska.

## NATURE OF THIS ACTION

7. Marquis Energy, a judgment creditor, brings this action to void Rayeman's improper and fraudulent post-judgment transfer of its membership interests in Nationwide 5, LLC ("NW5") to PVD Lender (the "Transfer"). As set forth more fully herein, the members of PVD Lender are almost identical to the members of NW5 with the only exception being Rayeman was replaced by a family member of one of the other members.

8. Marquis Energy seeks a declaration that the Transfer is void pursuant to the Nebraska Uniform Voidable Transactions Act ("NUVTA"), Neb. Rev. Stat. §§ 36-801 to 36-815 and/or under the terms of the NW5 operating agreement that prohibits the purported Transfer. Marquis Energy also seeks to foreclose its lien on Rayeman's membership interests in NW5 pursuant to Neb. Rev. Stat. § 21-142(a).

9. In addition, Marquis Energy seeks an injunction and money damages due to Defendants' violation of NUVTA, the Nebraska Deceptive Trade Practices Act ("NDTPA") and

Defendants' aiding and abetting. In the alternative, Marquis Energy seeks damages pursuant to the equitable doctrine of disgorgement.

## STATEMENT OF FACTS

### *The Judgment*

10. Marquis Energy is a business based in Hennepin, Illinois that produces, among other things, ethanol and distillers dried grains (DDGs) animal feed product.

11. Rayeman is a Maryland corporation that is or was based in Colorado and markets itself as a developer of technology and equipment for, among other things, manufacturing cattle feed pellets and DDG range cubes.

12. In 2018, Marquis Energy and Rayeman entered into a contract whereby Rayeman agreed to provide Marquis Energy technology and equipment for producing DDGs.

13. Rayeman failed to perform under the contract and a dispute arose among the Rayeman and Marquis Energy. In September of 2019, Marquis Energy and Rayeman entered into a settlement agreement to resolve the dispute. That settlement agreement required, among others, Rayeman to make a payment to Marquis Energy.

14. Rayeman subsequently breached the terms of the settlement agreement, and Marquis Energy filed an action for breach of contract against Rayeman in the Circuit Court of the Tenth Judicial Circuit of Putnam County, Illinois.

15. On July 30, 2020, the Circuit Court of the Tenth Judicial Circuit of Putnam County, Illinois entered a Judgment Order in favor of Marquis Energy and against Rayeman in the sum of $1,266,660.00[1] plus costs for execution (the "Judgment").

16. On November 30, 2020, Marquis domesticated the Judgment in Weld County District Court in the State of Colorado.

---

[1] The Judgment is comprised of $950,000.00 in damages plus an award of $316,000.00 in attorneys' fees.

17. In Colorado, Marquis garnished a total of $2,114.62 the Judgment from a bank account of Rayeman.

18. After the garnishments, the unpaid balance of the Judgment, exclusive of interest was $1,264,097.49.

### *Nationwide 5, LLC*

19. Upon information and belief, Nationwide 5, LLC ("NW5") is a Nebraska limited liability company formed in 2015 with a principal place of business at 1501 M Street, Ord, Nebraska 68862.

20. At all times relevant, Rayeman has been a member of NW5. The other members of NW5 are James Trotter, Gaylord Boilesen, and Thomas Kruml (collectively Trotter, Boilesen and Kruml will be referred to herein as the "Ord Group").

21. A true and accurate copy of NW5's operating agreement ("NW5 Operating Agreement") is attached hereto as Exhibit A and incorporated as if fully set forth herein.

22. Upon information and belief, NW5 was formed to implement an agreement made in or about 2015 between Rayeman and the Ord Group. Specifically, under the agreement, the Ord Group agreed to pay off approximately $1,700,000.00 of Rayeman's debts in exchange for receiving a 50% interest in the technology patents owned by Rayeman (the "Rayeman Patents").

23. Upon information and belief, NW5 was formed for the sole purpose of owning the Rayeman Patents.

24. Upon information and belief, to implement the agreement, (i) Rayeman received a 50% membership interest in NW5; (ii) the Ord Group collectively received the other 50% interest in NW5; (iii) Rayeman transferred ownership of the Rayeman Patents to NW5; and (iv) NW5 licensed the Patents back to Rayeman.

25. Upon information and belief, NW5 has no assets other than the Rayeman Patents.

26. Upon information and belief, the current fair market value of the Rayeman Patents exceed $4,300,000.00.

27. On April 19, 2021, Marquis Energy domesticated the Judgment in the District Court of Douglas County, Nebraska.

28. On May 10, 2021, the District Court of Douglas County, Nebraska issued an Order charging Rayeman's transferable interests in NW5 with the unsatisfied amounts of the Judgment, constituting a lien on said transferable interests (the "Charging Order").

29. On May 14, 2021, the Charging Order was served upon NW5.

### *The Transfer*

30. Defendant PVD Lender is a Nebraska limited liability company formed primarily by the three members of the Ord Group (Trotter, Boilesen, Kruml), the same members who with Rayeman comprised the members of NW5. While Rayeman was not included as a member of PVD Lender, Terina Trotter, who upon information and belief is James Trotter's daughter, is the fourth member.

31. PVD Lender and NW5 share a principal place of business at 1501 M Street, Ord, Nebraska 68862.

32. On February 12, 2021, Marquis Energy served post-judgment interrogatories to Rayeman in which Marquis Energy sought, among other things, extensive information regarding NW5 and Rayeman's interest therein.

33. On March 8, 2021, Rayeman responded to the interrogatories and stated, among other things, that Rayeman had "recently pledged Rayeman's ownership in NW5 in order to secure a loan to pay settlement."

34. Specifically, five days earlier, on March 3, 2021, Rayeman, along with its CEO, Samantha Western, and its principal employee and inventor, Michael Thomas, allegedly executed several documents (the "Settlement Documents") with PVD Lender that purport to fund a settlement paid to Livestock Nutrition Centers, L.L.C. ("Livestock Nutrition") by Rayeman and NW5 (the "Settlement").

35. Under the Settlement Documents:

    a. PVD Lender would "loan" to Rayeman, Samantha Western, and Michael Thomas (the "Borrowers") $2,100,000.00 to cover their purported share of the Settlement;

    b. In exchange Rayeman pledged its 50% membership and other ownership interest/units in and to NW5 including, without limitation, all rights in and to all profits, proceeds, and distributions of every kind and nature due to Rayeman (the "Pledged Interests");

    c. The Borrowers promised to repay PVD Lender $1,000,000.00 no later than April 1, 2021—less than 30 days after the Settlement Documents were executed;

    d. The Borrowers promised to repay PVD Lender the full principal and interest of the "loan" no later than June 1, 2021—less than three months after the Settlement Documents were executed;

    e. The failure to make either payment would constitute an event of default; and

    f. Upon an event of default, PVD Lender was entitled to accept the Pledged Interests, i.e., Rayeman's interests in NW5, in full satisfaction of the Borrowers' "debt" to PVD Lender.

36. On March 8, 2021, just 20 minutes before Rayeman served its responses to Marquis' interrogatories, PVD Lender filed a UCC-1 Financing Statement describing the collateral as all assets of Rayeman, now owned or hereafter acquired, wherever located, including proceeds thereof.

37. Rayeman did not make any payment required by the Settlement Documents and thus defaulted on the "loan" to PVD Lender.

38. On June 3, 2021, PVD Lender served to Rayeman, with a copy to Marquis Energy, a Proposal for Acceptance of Collateral in Full Satisfaction under Neb. Rev. Stat. UCC § 9-620 (the "Proposal").

39. In the Proposal, PVD Lender proposed to accept Rayeman's entire interest in NW5 together with its general intangibles in full satisfaction of $2,152,500.00, which equaled the outstanding principal and interest due under the Settlement Documents.

40. On June 21, 2021, pursuant to Neb. Rev. Stat. UCC § 9-620, Marquis served to PVD Lender a notification of objection to the Proposal.

41. Upon information and belief, Rayeman's only substantial asset is its membership interest in NW5.

42. Upon information and belief, Rayeman has no income or other source of funding.

43. Upon information and belief, Rayeman, the Ord Group, and PVD Lender did not reasonably expect that Rayeman or Western or Thomas would pay PVD Lender $1,000,000.00 in less than 30 days after executing the Settlement Documents, especially in light of the Judgment that had been obtained by Marquis Energy over seven months earlier.

44. Upon information and belief, Rayeman, the Ord Group, and PVD Lender did not reasonably expect that Rayeman or Western or Thomas would pay PVD Lender the full principal

and interest of the "loan" less than three months after executing the Settlement Documents, especially in light of the Judgment that had been obtained by Marquis Energy over seven months earlier.

45. At the time Rayeman pledged its interest in NW5 to PVD Lender to secure the Settlement Funds, Rayeman, the Ord Group and PVD Lender knew or should have known of Marquis Energy's Judgment Lien that had been obtained in Illinois and domesticated in Colorado. In addition, at the time Rayeman pledged its interest in NW5, Marquis Energy had taken various steps to collect the Judgment including, but not limited to, garnishment of Rayeman bank accounts, domesticating the Judgement in Colorado and serving garnishment interrogatories on Rayeman.

## FIRST CAUSE OF ACTION
### Declaratory Judgment – Invalid/Voidable Pledge

46. Marquis Energy incorporates the allegations contained in paragraphs 1 through 45 as if fully set forth herein.

47. Rayeman has purported to pledge, and PVD Lender has proposed to accept, the Pledged Interests in full satisfaction of certain Borrowers' "debt" to PVD Lender.

48. The NW5 Operating Agreement does not entitle a member to pledge its membership interest as collateral for a loan.

49. PVD Lender had notice of the Operating Agreement's restriction on a member's right to pledge its membership interest as collateral for a loan at the time of the Transfer.

50. A transfer of a transferable interest in violation of a restriction on transfer contained in the operating agreement is ineffective as to a person having notice of the restriction at the time of transfer. Neb. Rev. Stat. § 21-141(f).

51. An actual, present, and justiciable controversy has arisen between Marquis Energy and the Defendants concerning Rayeman's right to pledge, and PVD Lender's right to accept, the Pledged Interests.

52. Marquis Energy seeks a declaratory judgment from this Court that Rayeman is not entitled to pledge, and PVD Lender is not entitled to accept, the Pledged Interests; and Rayeman's purported pledge, and PVD Lender's attempted acceptance, of the Pledged Interests is void.

## SECOND CAUSE OF ACTION
(Nebraska Uniform Voidable Transactions Act Neb. Rev. Stat. § 36-801 et seq.)

53. Marquis Energy incorporates paragraphs 1 through 52 of its Complaint as if fully set forth herein.

54. Rayeman's attempt to pledge its membership interests in NW5 to PVD Lender and PVD Lender's attempt to accept Rayeman's membership interests in NW5 are voidable under the Nebraska Uniform Voidable Transactions Act for the reasons set forth above.

55. At the time Rayeman attempted to pledge its membership interests in NW5 to PVD Lender and when PVD Lender attempted to accept the membership interests, Marquis Energy had a Judgment against Rayeman.

56. At all times relevant, the Ord Group and PVD Lender were Affiliates and/or Insiders as those terms are defined by Neb. Rev. Stat. § 36-802.

57. The transfers set forth fully above, were made with actual intent to hinder, delay, or defraud Marquis within the meaning of Neb. Rev. Stat. 36-805(a)(1), and/or were made without receiving a reasonably equivalent value in exchange for the transfer or obligations under Neb. Rev. Stat. 36-805(a)(2). As a result, such transfers are voidable under the Nebraska Uniform Voidable Transactions Act. Marquis Energy thus is entitled to all remedies available

under Neb. Rev. Stat. § 36-808 as to all Defendants, jointly and severally. This includes, but is not limited to, an Order avoiding the purported Transfer and prohibiting the pledge or acceptance of the pledge until after Marquis Energy's Judgment has been fully satisfied; an Order of attachment in the favor of Marquis Energy on Rayeman's ownership interest in NW5; foreclosure of Marquis Energy's lien on Rayeman's ownership interest in NW5, and a preliminary and permanent injunction against further disposition of Rayeman's ownership interest in NW5 until after Marquis Energy's Judgment lien has been fully satisfied.

### THIRD CAUSE OF ACTION
### (Aiding and Abetting)

58. Marquis Energy incorporates paragraphs 1 through 57 of its Complaint as if fully set forth herein.

59. On or before March 3, 2021, Rayeman, the Ord Defendants and PVD Lender agreed, and knowingly and willfully aided and abetted to hinder, delay and/or defraud Marquis Energy in its collection of the Judgement and to render Rayeman unable to pay any and all damages owed to Marquis Energy under the Judgement and to force Marquis Energy to incur additional and unnecessary damages in connection with the collection of the Judgment.

60. Pursuant to the plan, Defendants have attempted to transfer the majority asset of Rayeman from Rayeman to PVD Lender in a manner to defraud Marquis Energy in its legal rights as set forth more fully above.

61. Defendants actions were done pursuant to, and in furtherance of, aiding and abetting the transfer of an asset for their own benefit and to harm Marquis Energy.

63. As a proximate result of Defendants wrongful acts set forth herein, Marquis Energy has been generally damaged in an amount to be determined at trial but at least $1,266,660.00.

64. At all times relevant, Defendants knew or should have known of Rayeman's obligations to Marquis Energy and purposefully frustrated and took actions to thwart Marquis Energy's rights and improperly benefit themselves. The actions taken by Defendant have been intentional, willful, fraudulent and done with the express purpose of defrauding Marquis Energy. Marquis Energy is therefore entitled to a judgement against all Defendants, jointly and severally. Defendants and any subsequent transferees of the majority asset of Rayeman should be treated, in equity, as those of the Rayeman until the Judgment is satisfied.

## FOURTH CAUSE OF ACTION
### (Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-302)

65. Marquis Energy incorporates paragraphs 1 through 63 of its Complaint as if fully set forth herein.

66. Defendants actions set forth more fully above are deceptive as set forth in the Nebraska Deceptive Trade Practices Act, including but not limited to Neb. Rev. Stat. § 87-302 (16).

67. Due to Defendants deceptive actions, as set forth above, Marquis Energy is entitled to the remedies set forth in Neb. Rev. Stat. § 87-303 including, but not limited to, an injunction voiding any purported transfer of Rayeman's ownership interest in NW5 to PVD Lender and prohibiting Rayeman from transferring or pledging Rayeman's membership interest in NW5 until Rayeman's Judgment has been fully satisfied, costs and reasonable attorney's fees incurred by Marquis Energy in the collection of the Judgment as to both Defendants jointly and severally.

## FIFTH CAUSE OF ACTION
### (Unjust Enrichment)

68. Marquis Energy incorporates paragraphs 1 through 67 of its Complaint as if fully set forth herein.

69. In the event the purported transfer of Rayeman's membership interest to NW5 is not void, Defendants have been unjustly enriched by the Transfer and PVD in justice and fairness ought to pay Marquis Energy an amount to be proven at trial, but not less than $1,266,660, together with pre and post judgment interest, costs and fees together with any other relief this Court finds just and warranted under the circumstances.

## REQUEST FOR RELIEF

WHEREFORE, Marquis Energy prays for an Order from this Court as follows:

1. A declaratory judgment that Rayeman is not entitled to pledge, and PVD Lender is not entitled to accept, Rayeman's pledged ownership interest in NW5 ("Pledged Interest"); and Rayeman's purported pledge, and PVD Lender's attempted acceptance, of the Pledged Interests is void;

2. An Order avoiding the purported transfer of Rayeman's Pledged Interest and prohibiting Rayeman from pledging and/or PVD Lender accepting the Pledged Interest until after Marquis Energy's Judgment has been fully satisfied;

3. An Order of attachment in the favor of Marquis Energy on Rayeman's ownership interest in NW5;

4. An Order foreclosing Marquis Energy's lien on Rayeman's ownership interest in NW5;

5. A Preliminary and Permanent Injunction against further disposition of Rayeman's ownership interest in NW5 until after Marquis Energy's Judgment lien has been fully satisfied;

6. A Judgment in the amount of damages to be proven at trial together with reasonable attorney's fees incurred by Marquis Energy, prejudgment interest, post judgment interest and costs against Defendants jointly and severally; and

7. Any other relief the Court may find just and warranted under the circumstances. Marquis Energy LLC requests a trial in Omaha, Nebraska.

Dated this 5th day of November, 2021.

By: s/Brian T. McKernan
Brian T. McKernan, #22174)
David DeWald, #24765
McGrath North Mullin & Kratz, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, Nebraska 68102
(402) 341-3070
(402) 341-0216 fax
bmckernan@mcgrathnorth.com
ddewald@mcgrathnorth.com

and

Matthew Chudacoff  (pro hac vice to follow)
Coan, Payton & Payne, LLC
103 W. Mountain Ave., Suite 200
Fort Collins, CO 80524
Telephone: 970-225-6700
mchudacoff@cp2law.com

*Attorney for Plaintiff Marquis Energy, LLC*